[No. 5919. Decided February 28, 1906.]

ALLEN & GILBERT-RAMAKER COMPANY, *Respondent, v.*
CANADIAN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

CARRIERS—OF GOODS—BILL OF LADING. Where the receiving carrier issues a bill of lading for goods to be shipped beyond its line and the consignor delivers the same to an agent of an intermediate carrier who issues a bill of lading upon which the goods were shipped, such intermediate carrier makes itself an original carrier and its bill of lading stands for the contract between the consignor and the carrier.

SAME—LOSS OF GOODS—NEGLIGENCE OF CONNECTING LINE—LIABILITY OF ORIGINAL CARRIER. A common carrier to which goods are consigned and which issues to the shipper an original bill of lading for the carriage of the goods to a point beyond its own line, is responsible for the delivery of the goods and liable for damages thereto after the goods have left its own line.

SAME—BILL OF LADING—CONSTRUCTION—EXEMPTION FROM LIABILITY. A statement printed in fine print in the bill of lading issued by a carrier for the transportation of goods to a point beyond its own line, to the effect that in case of any loss or damage to the property during such transportation the carrier alone shall be held responsible therefor in whose custody the goods might be at the time, does not constitute a contract between the parties exempting the original carrier from responsibility for damages done while in the hands of connecting carriers, especially if such bill of lading is given after the delivery of the goods by the shipper.

Appeal from a judgment of the superior court for King county, Morris, J., entered April 10, 1905, upon findings in favor of the plaintiff, after a trial on the merits, before the court, a jury being waived, in an action for damages to goods shipped. Affirmed.

*Thomas B. Hardin* and *Norwood W. Brockett,* for appelant, contended, among other things, that a carrier may limit its liability to loss occurring on its own line. *McCarn v. International etc. R. Co.,* 84 Tex. 352, 19 S. W. 547, 31 Am. St. 51, 16 L. R. A. 39; 6 Am. & Eng. Ency. Law

1Reported in 84 Pac. 620.

(2d ed.), 639; *Berg v. Atchinson etc. R. Co.,* 30 Kan. 561, 2 Pac. 639; *Rickerson Roller-Mill Co. v. Grand Rapids etc. R. Co.,* 67 Mich. 110, 34 N. W. 269; *Harding v. International Nav. Co.,* 12 Fed. 168; *Ortt v. Minneapolis etc. R. Co.,* 36 Minn. 396, 31 N. W. 519; *McConnell v. Norfolk etc. R. Co.,* 86 Va. 248, 9 S. E. 1006; *Hunter v. Southern Pac. R. Co.,* 76 Tex. 195, 13 S. W. 190; *Myrick v. Michigan etc. R. Co.,* 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325; *Hill v. Georgia etc. R. Co.,* 43 S. C. 461, 21 S. E. 337; *Pennsylvania Co. v. Dickson,* 31 Ind. App. 451, 67 N. E. 538; *Galveston etc. R. Co. v. Short* (Tex. Civ. App.), 25 S. W. 142; *Taffe v. Oregon R. Co.,* 41 Ore. 64, 67 Pac. 1015, 68 Pac. 732, 58 L. R. A. 187; *Dimmitt v. Kansas City etc. R. Co.,* 103 Mo. 433, 15 S. W. 761; *Washburn Crosby Co. v. Boston etc. R. Co.,* 180 Mass. 252, 62 N. E. 591; *Courteen v. Kanawha Dispatch,* 110 Wis. 610, 86 N. W. 176, 55 L. R. A. 182; *Tolman v. Abbot,* 78 Wis. 192, 47 N. W. 264; *Keller v. Baltimore etc. R. Co.,* 174 Pa. St. 62, 34 Atl. 455.

*Ballinger, Ronald, Battle & Tennant* for respondent, contended, *inter alia,* that the acceptance of the goods, in the absence of an express contract, implies an undertaking to transport them to their destination beyond the carrier's own line. *Falvey v. Georgia Railroad,* 76 Ga. 597; *Atlanta etc. R. Co. v. Texas Grate Co.,* 81 Ga. 602, 9 S. E. 600; *Mobile etc. R. Co. v. Copeland,* 63 Ala. 219, 35 Am. Rep. 13; *Louisville etc. R. Co. v. Meyer,* 78 Ala. 597; *Hansen v. Flint etc. R. Co.,* 73 Wis. 346, 41 N. W. 529, 9 Am. St. 791; *Pereira v. Central Pac. R. Co.,* 66 Cal. 92, 4 Pac. 988; *Halliday v. St. Louis etc. R. Co.,* 74 Mo. 159, 41 Am. Rep. 309; *Illinois Cent. R. Co. v. Frankenberg,* 54 Ill. 88, 5 Am. Rep. 92; *Adams Express Co. v. Wilson,* 81 Ill. 339; *Wabash etc. R. Co. v. Jaggerman,* 115 Ill. 407, 4 N. E. 641; *Baltimore R. Co. v. Campbell,* 36 Ohio St. 647, 38 Am. Rep. 617; *Carter & Hough v. Peck,* 4 Sneed 203, 67 Am. Dec. 604; *Western*

*etc. R. Co. v. McElwee,* 6 Heisk. 208; *East Tennessee etc. R. Co. v. Rogers & Hartsell,* 6 Heisk. 143, 19 Am. Rep. 589; *Louisville etc. R. Co. v. Campbell,* 7 Heisk. 253; *Angle & Co. v. Mississippi etc. R. Co.,* 9 Iowa 487; *Mulligan v. Illinois etc. R. Co.,* 36 Iowa 181, 14 Am. Rep. 514; *Weed & Weed v. Saratoga etc. R. Co.,* 19 Wend. 534; *Bradford v. South Carolina R. Co.,* 7 Rich. (S. C.) 201; *Kyle v. Laurens R. Co.,* 10 Rich. (S. C.) 382; *Nashua Lock Co. v. Worcester etc. R. Co.,* 48 N. H. 339. Payment of full freight constitutes a contract to carry to the destination. *Davis v. Jacksonville etc. Line,* 126 Mo. 69, 28 S. W. 965; *Lin v. Terre Haute R. Co.,* 10 Mo. App. 125; *Fisher v. Merchants' Dispatch Transp. Co.,* 13 Mo. App. 133; *Baltimore Steamboat Co. v. Brown* 54 Pa. 77; *Jennings v. Grand Trunk R. Co.,* 127 N. Y. 438, 28 N. E. 394; *Hill Mfg. Co. v. Boston etc. R. Co.,* 104 Mass. 122, 6 Am. Rep. 202; *Perkins v. Portland etc. R. Co.,* 47 Me. 573, 74 Am. Dec. 507; *Nashua Lock Co. v. Worcester etc. R. Co.,* and *Illinois etc. R. Co. v. Frankenberg, supra.* The following are simlar cases in point. Hutchinson, Carriers, § 158; *Eckles v. Missouri Pac. R. Co.* (Mo. App.), 87 S. W. 99; *Germain Fruit Co. v. California etc. R. Co.,* 133 Cal. 426, 65 Pac. 948; *Colfax Mountain Fruit Co. v. Southern Pac. R. Co.,* 118 Cal. 648, 50 Pac. 775. See, also, *Harp v. The Grand Era,* Fed. Cas. No. 6,084; *Baltimore etc. R. Co. v. Wilkens,* 44 Md. 11, 22 Am. Rep. 26; *Wyman v. Chicago etc. R. Co.,* 4 Mo. App. 35; *Cincinnati etc. R. Co. v. Spratt,* 2 Duval (Ky.) 4; *Block v. Fitchberg etc. R. Co.,* 139 Mass. 308; *Hart v. Rensselaer etc. R. Co.,* 8 N. Y. 37, 59 Am. Dec. 447; *Carter & Hough v. Peck,* 4 Sneed 203, 67 Am. Dec. 604; *Gulf etc. R. Co. v. Lewine* (Tex. Civ. App.), 29 S. W. 835; *Norfolk etc. R. Co. v. Read,* 87 Va. 185; *Cummins v. Dayton etc. R. Co.,* 9 Am. & Eng. R. R. Cases, 36; *Wahl v. Holt,* 26 Wis. 703; *Cutts v. Brainerd,* 42 Vt. 566, 1 Am. Rep. 353; *Page v. Chicago etc. R. Co.,* 7 S. D. 297.

DUNBAR, J.—The judgment appealed from is for $500 and costs, in favor of the plaintiff and against defendant, for damages to pianos shipped from New York to Seattle, in the transportation of which defendant was an intermediate carrier. The car in which the pianos were shipped was delivered to, and accepted and sealed by, the New York, New Haven & Hartford Railroad Company, which issued and delivered to Ludwig & Company its bill of lading. Ludwig & Company, the consignors, delivered the bill of lading of the New York, New Haven & Hartford Railroad Company to the agent of the defendant, the Canadian Pacific Railroad Company, and received a new bill of lading or receipt from the defendant. The other intermediate companies were the New York Central & Hudson River Railway Company and the Northern Pacific Railway Company. The end of the defendant's line was at Sumas in Washington. When the car reached there, it was turned over to the Northern Pacific Railway Company, which carried it to its destination at Seattle.

The cause was tried by the court, a jury having been waived. The court, among other things, found, that the plaintiff had purchased from Ludwig & Company's manufactory, in New York, the pianos in question; that Ludwig & Company had shipped them to the plaintiff at Seattle; that the New York, New Haven & Hartford Railroad Company issued to Ludwig & Company a bill of lading for said pianos; that thereupon Ludwig & Company delivered the original bill of lading to the duly authorized agent of the defendant in New York, who thereupon issued and delivered to said Ludwig & Company a bill of lading, upon which the goods were shipped; found that the goods were damaged in transit through the negligence of the defendant, and that the plaintiff was entitled to the judgment obtained. Exceptions were taken to the findings of fact, but an examination of the record convinces us that they were justified.

The only question which it is necessary to discuss in this

case is a legal one, viz.:   What is the responsibility of the
defendant company where goods were shipped under the cir-
cumstances under which these goods were shipped, the goods
passing over the lines of different companies and being in-
jured in transit?   The court in this case found that it was
not possible to determine on what particular line the damage
occurred.   We will consider the case as though the defendant
here were the original company· to which the goods were con-
signed, which it made itself, we think, by issuing the bill of
lading or receipt, which stands for the contract between the
shipper and the common carrier.

Was the defendant responsible to the shippers for dam-
ages done to their goods beyond the termination of its own
lines?   It may be conceded, we think, that a carrier is under
no common law obligation to transport goods beyond its own
line, and it may also be conceded that it cannot exempt itself
from liability for its own negligence on its own line.   The
contention of the appellant here is two-fold, (1) that the
carrier did not assume to ship the goods beyond its own lines,
and (2) that it did by express stipulation exempt itself from
liability; while the contention of the respondent is that the
case at bar is one where, by special contract, the defendant
assumed the duty of transporting the pianos from New York
to Seattle, and that, having done so, by mere provisions in-
serted in its receipt or bill of lading, it cannot limit its com-
mon law liability to a particular part of such through route;
that when, by special contract, it undertakes to transport
freight throughout the whole route to points beyond its own
line, the law for the time being makes the whole line its line,
and imposes upon it the duty of transporting its freight to
its destination; that other connecting carriers for the purpose
of that transportation become its agents, and that it cannot
limit its common law liability to any particular portion or
link of that through line.

On this subject of responsibility of transportation com-
panies, there is a wilderness of conflicting authority, some

courts holding that, in the absence of a special contract, it will not be presumed that the carrier attempts to deliver the goods beyond the terminus of its own line; others, that the fact of the acceptance of the goods by the carrier and the issuance of a receipt or bill of lading implies a contract to safely deliver to destination mentioned in the bill of lading. This is the universal rule in England, and was laid down in the celebrated case of *Muschamp v. Lancaster etc. R. Co.,* 8 M. & W. 421, and has been adhered to uniformly by the English courts ever since. In that case a parcel was delivered at Lancaster, to the Lancaster & Preston Junction Railway Company, directed to a person at a place in Derbyshire. The Lancaster & Preston Junction Railway Company was known to be proprietor of the line only as far as Preston, where the railway united with the North Union line, and that afterwards with another, and so on into Derbyshire. The parcel having been lost after it was forwarded from Preston, it was held that the Lancaster & Preston Railway Company was liable for its loss. In speaking of the instruction that had been made by the lower court, and which was the alleged error in the case, viz., that the jury might infer the contract to deliver at the end of the route, that the goods had been received and a receipt given therefor, Lord Abinger said:

"I hardly think they would be likely to infer so elaborate a contract as that which the defendants' counsel suggest, namely, that as the line of the defendants' railway terminates at Preston, it is to be presumed that the plaintiff, who intrusted the goods to them, made it part of his bargain that they should employ for him a fresh agent both at that place and at every subsequent change of railway or conveyance, and on each shifting of the goods give such a document to the new agent as should render him responsible. . . . Besides, the carriage-money being in this case one undivided sum, rather supports the inference that although these carriers carry only a certain distance with their own vehicles, they make subordinate contracts with the other carriers, and are partners *inter se* as to the carriage-money; a fact of which the owner of the goods could know nothing, as he only pays

the one entire sum at the end of the journey. . . . It is better that those who undertake the carriage of parcels, for their mutual benefit, should arrange matters of this kind *inter se,* and should be taken each to have made the others their agents to carry forward."

It is asserted by the appellant in its reply brief that the cases cited by the respondent do not sustain the contention made by the respondent that, while the carrier owes no duty to the shipper to carry goods marked to a destination beyond its own line, yet when it does so undertake, it is prohibited by law from stipulating in its contract that it shall be liable only for its own negligence. An examination of these cases assures us, however, that while many of them are decided on the particular facts in the case, many of them do in principle sustain respondent's contention, and announce their adherence to the rule laid down in *Muschamp's* case; and many more are cited by Hutchinson on Carriers, pp. 168, 169. So that it will not be necessary to reproduce them here. That author also states that, upon the question of the justice and policy of this rule, the American courts are divided; that a number of them have emphatically approved and adopted it, while in a majority of the states the rule has been denied. But it seems to us, as a matter of first impression, that the rule is a wise and equitable one, and necessary for the protection of rights, without depriving the carrier of any rights or of any legitimate defense. If it should be held that the shipper could recover only against the carrier on whose line the damage was actually done, it can readily be seen that in many instances he would be deprived of his remedy altogether; for, as is found by the court in this case, in a majority of cases it would probably be impossible for him to establish the time at which the damage complained of was engendered. It would also be impracticable for him to make special contracts with all the different transportation lines. These companies enter into these traffic arrangements with each other for their mutual benefit, and may enter into them with agreements as

to the protection of their separate interests by inspection, surveillance, or otherwise, while surveillance or care of the goods by the owner would be impossible.

Some of the difficulties besetting the contention of non-responsibility are noticed by the supreme court of New Hampshire, in *Nashua Lock Co. v. Worcester etc. R. Co.*, 48 N. H. 339, where all the leading authorities are collated and reviewed. Among other things it is said:

"The use of steam in carrying goods and passengers has produced a great revolution in the whole business. The amount and importance of it have of late vastly increased and are every day increasing. The large business between different parts of the country is done, as in this case, by parties who are associated in long continuous lines, receiving one fare through and dividing it among themselves by mutual agreement. They act together for all practical purposes so far as their own interests are concerned as one united and joint association. In managing and controlling the business on their lines they have all the advantages that could be derived from a legal partnership. They make such an arrangement among themselves as they see fit for sharing the losses, as they do the profits that happen in any part of their route. If by their agreement each party to the connected line is to make good the losses that happen in his part of the route, the associated carriers, and not the owner of the goods, have the means of ascertaining where the losses have happened. And if this cannot be known, there is nothing unreasonable or inconvenient in their sharing the loss, as in case of a legal partnership, in proportion to their respective interests in the whole route. They undertake the business of common carriers, and must be understood to assume the legal liabilities of that business. They transact the business under a change of circumstances; but the principles and the general policy of the common law, which, as an elementary maxim, holds the common carrier liable for all accidental losses, must be applied to these new methods of transacting the same business; and there is certainly nothing in the present condition of the business which calls for any relaxation of the old rule. The great value of commodities transported over these connected lines; the increased risk of loss and damage from the

immense distances over which they carry goods; the fact that where goods are once entrusted to carriers on these long routes they are placed beyond all control and supervision of the owner are cogent reasons for holding those who associate in these connected lines, to a rule that shall give effectual and convenient remedy to the owner, whose goods have been lost or damaged in any part of the line. Any rule which should have the effect to defeat or embarrass the owner's remedy, would be in direct conflict with the principles and whole policy of the common law."

And much more to the same effect is said by this court. In fact, it seems to us that to deny this right to the shipper would be equivalent to a denial of justice at the hands of the law. The money is paid in one lump sum. The equitable distribution of this money is not within the province of the shipper. He has no way of ascertaining what the contract is between the different connecting lines in relation to their recompense or responsibility, and if his goods are lost or damaged he is relegated to a search across the continent to obtain information as to the responsibility of the different carriers for the damage, information which, in many cases, would be entirely unavailable. He has no way of accompanying the goods to look after them himself; probably would not be allowed to do so, under the transportation rules of the different companies, if he were so inclined. He deals with one company, which accepts his goods, receipts him for the same, and contracts to carry them to their destination; and any rule which would throw upon him the difficulties we have suggested would be unnecessary and inequitable.

It is contended, however, by the appellant that there is a special contract in this case, by which the defendant has exempted itself from liability; that by the bill of lading itself it is stipulated, "in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that the company alone shall be held answerable therefor in whose custody the

same may be at the time of the happening of such loss, detriment, or damage." Even conceding, without deciding, that these conditions are reasonable and could be enforced if agreed to, they are in very fine type, almost impossible for any one not accustomed to them to read, and frequently, as in this case, made more illegible by the use of stamps which cover large parts of the printed matter; and without deciding whether or not the carrier, having made the other connecting carriers its agents in handling the goods which it started, would be bound by the action of such agents and could not, therefore, escape the common law liability which attaches to carriers, we think that this and similar expressions or announcements in bills of lading and receipts, etc., can in no wise be said to be contracts which bind parties to business transactions. Many of the cases, which take the view that carriers under the circumstances of this case can exempt themselves from liability by contracts, hold that such statements made by the carrier do not constitute a contract; especially statements made on bills of lading that are frequently not handed to the shipper until the transaction is completed as far as he is concerned and the goods shipped. In laying down the text, on page 642, 6 Am. & Eng. Ency. Law (2d ed.), the author says:

"It is therefore of no effect where it is brought to the knowledge of the shipper after the goods have been shipped and it is too late for him to recede, as where it is contained in a bill of lading handed to the shipper after the goods have left."

There is by some courts held to be a distinction between the right of a carrier to exempt itself from liability beyond the line of its road absolutely, and the right to an exemption from its negligence. On page 643, 6 Am. & Eng. Ency. Law (2d ed.), it is said:

"Where the carrier undertakes, either expressly, or, as is the rule in some jurisdictions, impliedly by accepting the goods marked to a point beyond its line, to carry the goods

over the entire route although the point of destination is beyond the terminus of its line, it is said that it cannot contract for an absolute exemption from liability for losses not occurring on its own line; that in such a case it can only limit its common-law liability as insurer, and remains liable for any loss caused by negligence, even on a connecting line."

It would seem to us that there might be some reason in this distinction. Supporting this view is cited, *Galveston etc. R. Co. v. Allison,* 59 Tex. 193; *Halliday v. St. Louis etc. R. Co.,* 74 Mo. 159, 41 Am. Rep. 309; *Cincinnati etc. R. Co. v. Pontius,* 19 Ohio St. 221; *Condict v. Grand Trunk R. Co.,* 54 N. Y. 500; and several cases from the Dominion of Canada.

On the whole case, we think no error was committed by the lower court, and the judgment is affirmed.

MOUNT, C. J., ROOT, CROW, FULLERTON, and HADLEY,