[No. 11484.   Department Two.   December 20, 1913.]

REVILLA FISH PRODUCTS COMPANY, *Appellant*, v. AMERICAN-HAWAIIAN STEAMSHIP COMPANY, *Respondent*.[1]

TRIAL—INSTRUCTIONS—CONFUSING INSTRUCTIONS. Instructions are so confusing and misleading as to require a reversal, where the jury were told that a certain fact does "not" prevent recovery, the instruction was then reread, leaving out the word not, giving a contrary meaning, the instructions were read to the jury as the law, and part of them denied, followed by a colloquy with counsel as to whether they correctly stated the law and this course followed throughout, from which the jury could get no clear idea; especially where other instructions gave contradictory rules.

CARRIERS—CONTRACT—ACTION FOR BREACH—DEFENSES. A shipper of oil cannot recover for loss occasioned by reason of shipping in improper retainers; not because of any contributory negligence, but

[1]Reported in 137 Pac. 337.

because such exception abrogates the common law liability of the carrier.

CARRIERS—CONTRACTS—BILL OF LADING — ACCEPTANCE — EFFECT— MODIFICATION OF CONTRACT. Where a bill of lading is requested and sent to the shipper after the shipment has started, for the purpose of attaching it to a draft on a sale of the goods "against document," the shipper has a right to assume that it will contain no stipulations other than those agreed upon; hence the shipper would not be bound by unauthorized limitations in the bill, unless, in addition to the receipt of the bill, the shipper actually consented thereto by receiving and accepting the bill as a modification of 'the contract.

Appeal from a judgment of the superior court for King county, Humphries, J., entered May 5, 1913, upon the verdict of a jury rendered in favor of the defendant, in an action for breach of a contract of carriage. Reversed.

*Arctander, Halls & Jacobsen,* for appellant.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp,* for respondent.

MORRIS, J.—Appeal from a judgment entered upon verdict in an action brought to recover damages for breach of contract of carriage of 155 barrels of fish oil from Seattle to New York. The appellant was located at Ketchikan, Alaska, and between October 21, 1911, and November 15, 1911, several cablegrams and letters passed between the parties relative to the terms and conditions of the shipment between Seattle and New York, in which the amount of the shipment, the size, weight, and measurement of the barrels in which it was to be contained, and the rate to be charged, were arranged. These matters being determined, the oil was shipped on the steamer Bertha at Ketchikan and arrived at Seattle on November 15. On arrival at Seattle, some of the barrels were found to be leaking. These were recoopered and the oil was then loaded on the steamer Virginian, which sailed on November 30. On December 2, respondent mailed a bill of lading to appellant at Ketchikan, which was received on December 11. The shipment was in

a bad condition on its arrival at New York, and this action was brought seeking to charge respondent with the loss. Respondent sought to show in defense, (1) that the loss was due to improper and insufficient containers, and (2) that it was exempt from liability by reason of the exceptions contained in the bill of lading. To these defenses, appellant replied, and the cause went to trial, resulting in a verdict for respondent.

A great many errors are charged against the lower court. We will, however, in view of the conclusions we have reached, consider only a few of them. The record discloses the following as a part of, and occurring during the reading, of the instructions:

" 'If you find from the evidence that plaintiff was guilty of negligence in shipping the oil in containers such as the evidence shows were used, this does *not* prevent plaintiff's recovery in this case if you also find from the evidence that defendant's way of stowing and carrying the barrels on end, provided you find that to be the case, contributed in a material degree to the loss.' I will read that over: 'If you find from the evidence that plaintiff was guilty of negligence in shipping the oil in containers such as the evidence shows were used, this does prevent plaintiff's recovery in this case if you also find from the evidence that defendant's way of stowing and carrying the barrels on end, provided you find that to be the case, contributed in a material degree to the loss.' Mr. Arctander: I suppose Your Honor means there, if you change it in that way, that it should be that— The Court: (interrupting) That if you are guilty of negligence and they are guilty of negligence and you both contributed to it and by that means the oil was lost, you cannot recover. Mr. Arctander: But Your Honor means to read instead of 'if' the word 'unless'—'in this case unless you also find from the evidence that defendant's way of'—don't you? The Court: Where? Mr. Arctander: In the fourth line; 'in this case unless you also find from the evidence'—you say that it does prevent plaintiff's recovery unless—The Court: (interrupting) 'If you find from the evidence that plaintiff was guilty of negligence in shipping the oil in containers such as the evidence shows were used, this does prevent plain-

tiff's recovery in this case if you also find from the evidence
that defendant's way of stowing and carrying the barrels on
end, provided you find that to be the case, contributed in a
material degree to the loss.' Mr. Arctander: Well, that
should be 'unless' instead of 'if' then; otherwise there is no
sense in it. The Court: How is that? Where is the 'if' do
you think? Mr. Arctander: In the fourth line, Your
Honor—'it does prevent his recovery unless the defendant by
stowing them on end materially contributed to the loss.' That
is the way it should read, shouldn't it? The Court: No, I
guess that reads all right. Mr. Arctander: All right. The
Court: (continuing) 'this does prevent plaintiff's recovery
in this case if you also find from the evidence that defend-
ant's way of stowing and carrying the barrels on end, pro-
vided you find that to be the case, contributed in a material
degree to the loss.' That is what I wanted to say. If you are
both guilty of negligence in the manner of handling this
cargo, you cannot recover. 'If you find from the evidence
that the oil was delivered to defendant in Seattle in good
order and condition, that on its arrival in New York City
there was a loss of 2,694 gallons of oil, then and in that case
the presumption arises that the loss was caused by the neg-
ligence of the defendant.' I denied that instruction, and give
you an exception. Mr. Rupp: In other words, that the
jury may understand it, you say that is not the law. The
Court: Well, I refuse that instruction. Mr. Rupp: Yes,
but you read it to them and they might get it— The Court:
(interrupting) I withdraw that from the jury. I will read
it so that you can see what I have withdrawn: 'If you find
from the evidence that the oil was delivered to defendant in
Seattle in good order and condition, that on its arrival in
New York City there was a loss of 2,694 gallons of oil, then
and in that case the presumption arises that the loss was
caused by the negligence of the defendant.' Now, I have
withdrawn that instruction from the jury. Mr. Rupp: They
understand that that is not given by you as the law? The
Court: It is marked 'denied,' not given by me as the law. 'If
you find from the evidence that the 155 barrels of oil were
delivered to defendant in Seattle in good order and condi-
tion, and that on arrival in New York one barrel was missing
entirely, one was broken to pieces, a great number of bar-
rels entirely or partially empty, while a considerable num-

ber of them was in the exact condition as to weight as when
received in Seattle, provided that in your judgment such
facts are established by the evidence, then and in that case
such facts, if they be facts, raise the presumption that the
loss of the oil was caused by the negligence of the defendant.'
I don't think so; I will deny that also. Mr. Rupp: In other
words, if I may interrupt you, you want to instruct the jury
that that is not the law? The Court: I do not instruct them
that that is the law. You can argue that when you come to
argue the case. Mr. Rupp: Well, I wanted to make it plain
to the jury that you did not tell them that was the law. The
Court: Yes, I do not tell the jury that is the law. I am not
permitted to comment on these matters. Mr. Rupp: I rec-
ognize that. The Court: I can't stop to explain why."

This, it seems to us, was so confusing and misleading to
the jury that it may safely be assumed that the average juror
would, at the conclusion of the court's charge, have at best
a very vague conception and understanding of the law that
was to govern him in his determination. The trial judge first
says, if the evidence discloses that appellant was negligent
in shipping the oil in the containers used, "this does not pre-
vent" recovery, if it also found that respondent improperly
stowed and carried the barrels and thus contributed to the
loss. This instruction is then re-read, leaving out the word
"not," thus giving a contrary meaning to the instruction
from that first read and leaving it confusing and unintel-
ligible, unless the jury could comprehend that the court was
endeavoring to charge them upon the law of contributory
negligence, which rule, as this was an action upon a contract
and not upon tort, had no place in the case except in so far as
it is the law that, in cases of this kind, the shipper cannot
recover where the loss is occasioned by reason of shipping
goods in improper containers or packages or of inherent
qualities or defects in the goods themselves; not because of
any theory of contributory negligence, but because these
exceptions abrogate the common law liability of the carrier.

The court then proceeds to read instructions, and enters
into a colloquy with counsel as to whether such instruction

as read is a correct statement of the law. The first of these instructions is then withdrawn, the court evidently concluding that it is not the law. The second, however, is not withdrawn, the court contenting himself with saying that he does not tell the jury it is the law, neither does he tell them it is not the law. It is bad practice—sufficient, it seems to us, to endanger any verdict—for the trial judge to read instructions to the jury and not determine until after they are read whether they should be given or not; and when this course is followed throughout the charge, it must be difficult for the jury to say what must be accepted and what must be rejected; especially in view of what was said to the jury in other instructions, in which they were told that, in the absence of exempting stipulations, the respondent would be liable for the loss unless the loss was due *solely* to the negligence of the shipper.

Again, an instruction is given that, in order to defeat recovery, it must appear that the oil was shipped in improper containers, and that this *alone* was the cause of the loss, which must be shown by a preponderance of the evidence. In another instance, the jury is told that, if the containers were unsuitable or insufficient by reason of the route or changes of climate, the appellant could not recover. Under this instruction, the mere fact is sufficient to defeat recovery. Under another, this would not defeat recovery unless it was the *sole* cause of the loss. Under a third instruction, it would defeat recovery if it *contributed to,* or was *one* of the facts occasioning the loss. It seems to us that nothing more need be said to establish the confusing and contradictory features of these instructions. The issues in this case were simple, and a few well chosen instructions could have submitted to the jury all that they were called upon to decide. The appellant was entitled to recover, having established its loss, unless the respondent was excused from liability by reason of the fact that the oil was not shipped in proper containers, which

caused the loss; or it had, by reason of the bill of lading, exempted itself from the cause of the damage.

And this brings us to another question necessary to be discussed. It is claimed that the court erred in admitting the bill of lading in evidence, it being appellant's contention that the bill of lading was no part of the contract nor any evidence thereof. This claim is based upon the fact that the bill of lading was not issued until after the oil was loaded upon the Virginian and the voyage begun. We think, however, because of what will hereafter be referred to, this fact is not alone determinative of the question, and that issue has presented a question of fact which must determine the effect to be given the bill of lading. The appellant, in one of its letters, requested: "Please have bill of lading made out, sending us one original and two first copies." In another it said: "We are as yet without bills of lading from you which we requested you to send us." The president and manager of appellant testified that he received the bill of lading, and that he requested the same because, the oil having been sold "cash against document," it was necessary to attach a bill of lading to the draft in order to obtain the purchase price of the oil; that he did not read the stipulations on the back of the bill of lading, but that he had been in the habit of shipping goods under bills of lading, and in a general way was familiar with the stipulations made use of by shipping companies in the effort to exempt or lessen their liability.

This evidence, it seems to us, presents some questions of fact as well as law, and that the court could not, under the circumstances, determine the effect to be given this bill of lading. The court charged the jury that, in giving effect to the bill of lading, they were to be governed by four considerations, three of which are immaterial to this feature of our discussion. The fourth was that, in order to defeat appellant's recovery, the jury must be satisfied that the bill of lading was received by appellant at the time of the delivery of the oil to the respondent, and not after the control

had passed from appellant to respondent, nor after the transportation had begun, "unless the bill of lading was to be sent to plaintiff." This last clause we think made this instruction bad. It is clear that the oil was shipped and on board the Virginian before the bill of lading was sent to appellant. From this it can be argued that both parties understood and agreed that the terms of the shipment were as determined by the correspondence between the parties, and that when appellant requested a bill of lading it had a right to assume that no stipulations other than those agreed upon should be incorporated in it, and that no attempt would be made by respondent to change the terms of the contract from those mentioned in the correspondence; and that, with this understanding and for the purpose indicated by the testimony of its president, it requested the bill of lading. If this should be found to be the fact, then it was error to charge the jury that, if the bill of lading was to be sent to the appellant, it was bound by its terms, as this would make the mere mailing of the bill of lading sufficient to bind appellant to all its stipulations. We do not think this is the law.

On the other hand, conceding that the terms of shipment had been agreed upon, it was nevertheless competent for the parties to modify those terms by additional ones or by a substitution of the contract as contained in the bill of lading. It was, therefore, under this phase of the case, a question of fact for the jury to determine whether, under all the circumstances as testified to by the president of appellant, his request for a bill of lading, his general knowledge of the stipulations contained therein, it was his understanding that the contract, in so far as it had been determined by the cablegrams and letters, was to be merged in and the oil carried subject to conditions and exceptions named in the bill of lading. We think something more than the sending of the bill of lading or its receipt was necessary to subject appellant to its terms, and that it must be found that there was an actual assent to the conditions in the bill of lading, and that in addition to

its receipt, the bill of lading was received and accepted by the appellant as a contract under which the oil was to be shipped. Scrutton, Charter Parties and Bills of Lading, pp. 9, 40; Carver, Carriage by Sea, §§ 56, 57, 58; 4 Cyc. 407; 4 Am. & Eng. Ency. Law (2d ed.), 517.

The case of *The Arctic Bird*, 109 Fed. 167, is very similar to that before us, and in it will be found a clear exposition of the law as we have attempted to declare it. This rule is also recognized in *The Caledonia*, 43 Fed. 681. The error of this instruction is clear by reference to our own holding in *Allen & Gilbert-Ramaker Co. v. Canadian Pac. R. Co.*, 42 Wash. 64, 84 Pac. 620, where, in discussing the effect of a bill of lading handed the shipper after the shipment of the goods, it was said, citing 6 Am. & Eng. Ency. Law (2d ed.), 642:

"It is therefore of no effect where it is brought to the knowledge of the shipper after the goods have been shipped and it is too late for him to recede."

We therefore conclude that the judgment ought not to stand, and it is reversed and a new trial ordered.

CROW, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.