[No. 14831. Department One. June 22, 1918.]

VITTUCCI COMPANY, *Respondent,* v. CANADIAN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

CARRIERS—OF GOODS—CONTRACTS—ILLEGALITY—PLEADING—AFFIRMATIVE DEFENSE. In an action against a carrier for breach of its contract to expedite a shipment of merchandise, salable only at a limited season, the illegality of the contract as giving special privileges in violation of tariff rules and regulations cannot be raised where it was not specially pleaded as a defense.

SAME—SPECIAL CONTRACT—BREACH—PLEADING — COMPLAINT — OBJECTIONS. In an action against a carrier for breach of a contract to deliver goods at a certain destination within a specified time, in which the complaint set out, and the trial proceeded on the theory of, a special oral contract, objection cannot be made to some confusion in the language of the complaint, where no motion was made to strike or require an election.

SAME—SPECIAL CONTRACT—BREACH—TIME OF DELIVERY—DEFENSES —DILIGENCE. In such an action, it is no defense that the goods were transported with reasonable diligence.

SAME — SPECIAL CONTRACT — BILL OF LADING — CHANGING TERMS AFTER SHIPMENT—ACCEPTANCE—EFFECT. Where a carrier by special

[1]Reported in 174 Pac. 981.

oral contract to expedite a shipment of goods, agreed to deliver the same at a certain destination within a specified time, and pursuant thereto took entire charge of the shipment, it cannot afterwards, without consent of the shipper, issue a bill of lading containing different terms as the terms of the agreement; and the shipper, accepting the bill of lading after the goods have been shipped and it is too late for him to recede, will not be bound by the terms of the bill of lading.

EVIDENCE—DECLARATIONS OF PARTY—LETTERS. In an action against a carrier for breach of a special contract to deliver goods at a certain destination within a specified time, letters written by the plaintiff to defendant are not inadmissible as self-serving declarations where they contained no reference to the contract, merely expressing anxiety to get the goods in time, a payment of charges under protest, and a statement of damages for delayed delivery.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 19, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Bogle, Graves, Merritt & Bogle,* for appellant.

*Aust & Terhune,* for respondent.

MITCHELL, J.—This is an appeal from a judgment upon a verdict in favor of respondent, plaintiff, for damages caused by failure of appellant to transport and deliver merchandise within a specified time according to an alleged oral agreement.

Respondent is engaged in business in Seattle, and appellant is a common carrier of passengers and freight for hire in Canada, as well as the state of Washington. In substance, the complaint alleges that, about October 15, 1915, the parties entered into an oral contract for the transportation by appellant of 315 barrels of chestnuts from Genoa, Italy, to Vancouver, B. C., thence to Seattle, the shipment to reach Seattle in time for the Christmas trade, December 3d to December 15th, appellant agreeing it would arrange for and take in its charge said shipment at all

times until it reached Seattle; that, about November 4, 1915, and in good time, the chestnuts were delivered and accepted for transportation at Genoa, Italy (all transportation charges being paid to appellant), but they did not reach Seattle until December 24, 1915, entirely too late for the Christmas market, to respondent's damage in the sum of $3,296.19. Appellant, in its answer, makes substantial denials, admits that, on November 4, 1915, 315 barrels of chestnuts were delivered to it at Genoa, Italy, and were transported by it, but alleges the transportation was in virtue of a bill of lading contract which is subsequently declared on as an affirmative defense in the answer, wherein it is stated the goods were delivered at Genoa, Italy, by one Carlo Cavargna, to whom was issued and who accepted a bill of lading for the shipment to Vancouver, B. C., there to be delivered to the order of the shipper, which bill of lading contains, according to the allegation of the answer, terms and conditions inconsistent with the terms and purposes of the alleged oral contract declared on in the complaint. This affirmative answer yielded to a demurrer interposed by respondent.

In support of the alleged oral agreement, the evidence, either undisputed or substantially, shows about as follows: Respondent, during the year 1915 and for some years prior thereto, was, and had been, engaged in business in Seattle as an importer and wholesaler. Mr. John Vittucci was president of the respondent corporation. Mr. W. P. Teegardin was resident contracting freight agent for appellant in Seattle for some time before and including the months of October, November and December, 1915. During the year 1915, and prior to October 7, respondent had arranged for the purchase of chestnuts in Italy, through a trader in Genoa, in a quantity larger than that involved in this

action.  Mr. Teegardin, learning of the prospective shipping, sought, prior to October 7, 1915, a portion of it for his road, soliciting a number of times Mr. Vittucci and one of his employees named Sisley, who at all times insisted upon the importance of a seasonable delivery of the chestnuts for the Christmas trade, such delivery to be made in Seattle not later than December 15, 1915, in respect to which Mr. Teegardin, as an inducement, represented that his road could transport across the continent more expeditiously than other roads, being free from such inland congested freight centers as other roads passed through.  Respondent arranged with its bank in Seattle for credit with the bank's correspondent in Genoa, Italy, to take care of the bill of lading issued at Genoa, which was accordingly done, and it, with the draft for the goods, was forwarded to the Seattle bank and taken up by respondent on December 9, 1915.  About October 7, respondent received the expected cable from Italy concerning the chestnuts, and on that day he had his final agreement with Mr. Teegardin, as agent for appellant, to the effect that he would give him the transportation of the car of chestnuts if he would guarantee arrival at Seattle in plenty of time for the Christmas market, not later than December 12 to 15; that Mr. Teegardin agreed to do so, and stated again that his road was in a better position than any other road because it could ship from New York and avoid congestion at Chicago and the middle west; that Mr. Teegardin said: "We have plenty of time and I will guarantee you that we will get the chestnuts in time for the Christmas market;" and promised to wire the railroad company's representative in Genoa to take charge of the shipment there as soon as it was ready, and that they would look after it until its arrival here; that he was told he could not have the shipment but for his promise and

guarantee. Transportation rates were discussed and agreed on, the goods to be shipped to Vancouver first, thence to Seattle. On October 7, 1915, apparently before the final understanding, respondent cabled Carlo Cavargna, the broker in Genoa, as follows:

"Rush Vancouver 400 Naples, 600 barrels picottes. Have opened credit. Wire sailing steamer."

At the time this cable was sent, or just after, Mr. Vittucci told Mr. Teegardin that the broker in Genoa had not been given instructions how to ship, whether by the Canadian Pacific or not, and Mr. Teegardin said he would wire either through their headquarters at Montreal or direct to Genoa to their agent to take possession of the shipment. On October 8, 1915, Mr. Teegardin, from Seattle, sent this cable message:

"Carlo Cavargna,
   "Genoa.
"If can make entire shipment 400 cases from Naples before 16th, otherwise ship 350 barrels from Genoa before 25th, routing via New York and Canadian Pacific. (signed) John Vittucci Company."

This last cable Mr. Teegardin says was prepared and sent by him, the expense thereof being absorbed by his company according to a business or trade-expense rule, with the knowledge of Mr. Vittucci, who testifies he never saw the dispatch until during the trial of this cause, though he knew Mr. Teegardin was to look after the shipment as he had promised. The shipment was received in Genoa by steamer on November 4th, reached Vancouver December 22d, and Seattle, December 24, 1915. About the time the chestnuts should have arrived in Seattle, respondent, by telephone and letters, almost daily urged Mr. Teegardin to get the shipment in. The goods were received too late and were nearly worthless in the market.

These facts show an express oral contract for an expedited shipment of merchandise salable only at a limited season, the violation of which, as in this case, carries damages, unless such transaction is under the ban of some law rendering it unenforceable and, in an action for the violation thereof, the pleadings properly present the issue of its illegality.

Appellant contends that the contract is illegal because of the provisions of an act of Congress entitled "An Act to Regulate Commerce," and amendments thereto, the rules and regulations of the interstate commerce commission, and the tariffs of appellant established in pursuance thereof, the broad purpose of which, as construed by the courts, would be defeated by sanctioning contracts giving special advantages such as expediting shipments to particular patrons. Armed with quite a line of authorities supporting such view, appellant charges error upon the trial court for refusing to let it prove that its applicable tariff did not permit contracts for expedited shipments, as a limitation upon the authority of its agent, Mr. Teegardin, by which respondent was bound. Under the pleadings, there being no such affirmative defense asserted, the trial court was right, under the rule announced in the well considered case of *Maitland v. Zanga,* 14 Wash. 92, 44 Pac. 117, to the effect that evidence to establish the illegality of a contract upon which the action is based cannot be introduced by a defendant who has not put the matter in issue by pleading it.

Again, it is claimed that the pleadings do not allege, nor the evidence show, a contract for transportation and delivery within a particular time, because in that portion of the complaint setting out the facts constituting the oral agreement the words "in the usual and customary time required for such transportation

and to reach Seattle in time for the Christmas market, same being from the 3d day of December to and including the 15th day of December,'' are found, and because at another place in the complaint, it is alleged that the respondent lost the Christmas market for the goods ''by reason of the carelessness and negligence of the defendant,'' whereby the shipment was delayed in New York for three weeks.

The implied agreement of a common carrier is to transport safely and deliver at destination within a reasonable time, and in an action for such common law carrier liability, evidence that there had been no unreasonable delay would be an answer. It is otherwise when the action is for a breach of a contract to carry within a particular time for in such case the carrier becomes liable for the consequence of a failure to transport within that time according to the terms of its contract, and evidence of diligence would not excuse. Having in mind these different kinds of actions and the complaint in the present case, and admitting there may be some confusion in the language of the complaint in the particular referred to, it is noticeable that no motion was made by the appellant to strike or to require respondent to elect, and the whole trial proceeded on the theory that the action was for breach of the special oral contract, which, without question, was sufficiently set out in the complaint. The court so instructed the jury.

Treating the complaint as alleging an oral contract, appellant contends that the evidence does not support such allegations, and cites a number of cases on this general subject, wherein different courts held the facts they considered were not sufficient to establish an express contract or to justify recovery. A review of those cases is not attempted here because, in our opin-

ion, the evidence in this case is quite enough to show an express oral contract.

Having seen that the action was considered and tried as one on special oral contract, the trial court was right in not allowing appellant to introduce evidence tending to show the transportation of the goods was performed with reasonable diligence.

Another objection raised is that the court did not attempt to advise the jury in any way as to what they must find to justify a verdict based upon the contract, other than to instruct them, on the one hand, that, if they found from the evidence that appellant agreed with respondent to transport chestnuts from Genoa, Italy, to Seattle, Washington, and there deliver them not later than December 15, 1915, and that appellant failed to do so, then appellant would be responsible; and, on the other hand, if they found from the evidence that appellant did not so agree, the verdict should be for appellant. Such course on the part of the trial court is objected to on the score that appellant valued the evidence as disclosing no more than preliminary negotiations between the parties, and accordingly requested the following instruction:

"You are instructed that negotiations which may have taken place between the parties as to the time when the chestnuts ought to arrive in Seattle or as to the amount of freight which the defendant would charge would not be sufficient to constitute an agreement on the part of the defendant to deliver the chestnuts in Seattle in time for the Christmas market, 1915; and if you find from the evidence that such negotiations were all that took place between the parties your verdict must be for the defendant."

It is obvious that, since there was no affirmative defense of illegality of the contract, if the proposed instruction is a proper revelation of the law, it was the duty of the court, rather than so instruct the jury, to

dismiss the case, for, if at the trial there is not sufficient proof to support the allegations of the complaint, the court must so determine as a matter of law.

The proof shows that a bill of lading was issued at Genoa on November 4, 1915, by appellant for the transportation of chestnuts to Vancouver, B. C., and there deliver them to "order, notify John Vittucci and Co.," wherein it is provided:

"No carrier is bound to transport said goods by any particular train or vessel or in time for any particular market or otherwise than as required by law unless by specific agreement indorsed hereon."

On December 9, 1915, at its Seattle bank, respondent, upon presentation, paid the draft covering the invoice price of the chestnuts, and also lifted the bill of lading, which was thereafter surrendered to appellant with directions to deliver fifteen barrels of chestnuts to respondent's house in Vancouver and reship the balance to Seattle.

Appellant contends that all prior negotiations became superseded by the bill of lading issued at the time the goods were received and constitutes the contract fixing the rights of the parties. Without doubt, it is the law that a bill of lading, of itself, has a two-fold character. It is a receipt as to the quantity and description of the goods shipped, and also a contract to transport and deliver the goods to the consignee or other person therein designated upon the terms specified in it, and that, so far as it embodies the terms of the contract, it is not to be varied by parol evidence. This rule rests upon the assumption that the bill of lading was received and accepted as such by the one bound thereby and at the time of the shipment. However, this is not a controversy between appellant and Cavargna, the broker who actually delivered the goods at the time the bill of lading was issued at Genoa, but

one between appellant and respondent, who, in Seattle, made an oral contract for the expedited shipment of goods from Genoa, after satisfactory credit had been arranged by respondent, through the bank here and its correspondent there, to take care of the transportation charges in Genoa for and on behalf of respondent, such contract providing that appellant, for and on behalf of respondent, by direct wire or through its general headquarters at Montreal, would take complete charge of the whole matter of the shipment there, in obedience to which it did, at its own expense, wire direct to Genoa in respondent's name, and pursuant to which the goods were received and the bill of lading issued to Cavargna, the goods to be delivered here to ''order and notify John Vittucci and Co.'' Appellant, making these arrangements at its own expense, was representing and using the name of respondent in obedience to the oral contract already entered into. To permit it afterwards to issue a bill of lading containing terms different from the contract already made for the service, without the consent or knowledge of respondent, and then insist that the bill of lading is the contract, is not permissible. The rule is that, where the bill of lading is handed the shipper after the goods have been shipped and it is too late for him to recede, he will not be bound by its terms. *Allen & Gilbert-Ramaker Co. v. Canadian Pac. R. Co.*, 42 Wash. 64, 84 Pac. 620; *Revilla Fish Products Co. v. American-Hawaiian Steamship Co.*, 77 Wash. 49, 137 Pac. 337; *The Arctic Bird*, 109 Fed. 167.

While it is true the facts in the cases just cited appear to be somewhat different from those here, the rule announced is applicable because, considering the oral contract made in this case and the subsequent issuance of the bill of lading without consent of respondent, the respondent will be treated as the shipper and not bound by the terms of the bill of lading. In this connection,

appellant insists that, in any event, it was a question for the jury to determine whether or not the goods were transported under the oral agreement or under the bill of lading, but that the court by its instructions practically foreclosed this to the jury because of the court's view of the law in a case where a bill of lading is delivered subsequent to the shipment, on account of which it was then error on the part of the court to give any instruction as to the bill of lading. But we do not think so. Under a general denial, a different contract from the one asserted in the complaint is provable, and accordingly the trial court properly admitted the bill of lading and testimony concerning it; and, since appellant had denied, both by answer and evidence, the oral contract, the court very properly instructed with reference to the bill of lading as well as the oral contract, and its instructions were right.

Lastly, it is contended the court erred in permitting certain letters, dated December 8, 22, and 24, 1915, written by respondent to appellant, to go to the jury, because they tended to show respondent's version of the contract and as such were self-serving declarations. They are too lengthy to be set out here, but an examination of them shows they contain no reference to the terms of the contract, and first express anxiety to get the goods in time, and later on a payment of charges under protest because the goods were too late for the trade, and finally a statement of damages claimed because of delayed delivery.

On the whole, we are satisfied there was a fair trial, and the judgment is affirmed.

MAIN, C. J., PARKER, FULLERTON, and TOLMAN, JJ., concur.