## MABEY v. O'CONNOR.

No. 4626.   Decided March 3, 1928.   (265 P. 597.)

*Bagley, Judd & Ray,* of Salt Lake City, for appellant.

*Vere L. McCarthy,* of Salt Lake City, for respondent.

THURMAN, C. J.

This in an action to recover from the defendant the purchase price of certain stock in the Western Woolen & Knit Goods Company, a corporation, and to rescind the contract for the purchase thereof by the plaintiff, on the alleged grounds that the defendant falsely represented to plaintiff the financial condition of the company, and made other false representations by which plaintiff was induced to purchase the stock. The case was tried to the court; findings were made in favor of defendant, and judgment entered thereon, from which judgment plaintiff appeals.

It is unnecessary to state the pleadings in minute detail. It is sufficient to say that plaintiff alleged in his complaint that in January, 1926, defendant, who was a stockholder in the said Western Woolen & Knit Goods Company, and also a director and vice president thereof, and district sales manager of part of the territory covered by the operations of said company, falsely represented to the plaintiff that said company was in a solvent and sound financial condition; that the business of said company was flourishing and growing, and that, if plaintiff would purchase said stock, he (the defendant) would continue as district sales manager for said company for a large part of the territory, and would continue to maintain and improve the sales organization thereof, and devote his time and energy to the promotion of said company's business. It is also alleged, in substance, that defendant was an efficient sales manager, and his promise to continue his connection with the company was one of the considerations which induced plaintiff to purchase the stock. It is further alleged that defendant knew, at the time he made such representations, that the same were false and untrue, and were made with intent to mislead and deceive the plaintiff and induce him to purchase the stock. The complaint further alleged that, in reliance upon said representations, on or about January 14, 1926, plaintiff purchased said stock from the defendant, and paid

him therefor the sum of $1,457, for which sum he prays judgment, with interest thereon, and costs. It is also alleged that, immediately after the purchase of said stock, plaintiff made an investigation of the financial condition of the company, and found that it was not as represented by the defendant, but, on the contrary, was insolvent, and unable to pay its just debts and liabilities. In addition thereto, it is alleged that, immediately after the sale of said stock to plaintiff, defendant entered the employment of Utah Woolen Mills Company as sales manager thereof, and immediately induced many of the sales agents theretofore operating under him for the Western Woolen & Knit Goods Company to desert said company and transfer their allegiance to the said Utah Woolen Mills company, which company was a competitor of the Western Woolen & Knit Goods Company, and that the business of the last-named company had been greatly impaired thereby, and the capital stock thereof greatly reduced in value. Finally, it is alleged, in substance, that, upon learning that the representations made by defendant to plaintiff were untrue, plaintiff rescinded his purchase of said stock, and served notice of such rescission on defendant, and tendered to defendant said chares of stock, and demanded of defendant that he return to plaintiff the purchase price thereof; that defendant refused to accept said stock or to return to plaintiff the purchase price.

Defendant, answering the complaint, admitted he was at the time alleged a stockholder, director, and vice president of the Western Woolen & Knit Goods Company, and was the owner of stock in said company, but specifically denied that he induced the plaintiff to purchase said stock, and denied that he made any of the alleged false representations to the plaintiff, and denied that he had any conversations at all with the plaintiff concerning the financial condition of said company at the time alleged in plaintiff's complaint, or at any time; denied that he ever sold, or attempted to sell, said stock, or any stock to plaintiff, and denied that he did sell said stock, or any stock to plaintiff at any time or at

all. Defendant's answer, in effect, denied each and every allegation of the complaint attempting to allege any kind of contractual relation with the plaintiff, or any business transaction whatever.

Plaintiff was sworn as a witness in his own behalf, and his testimony as to what was said by defendant on several occasions in January, 1926, prior to the alleged sale of the stock, tends to sustain the material allegations of his complaint. On the other hand, defendant, as a witness in his own behalf, categorically denied every statement made by plaintiff as to any representation concerning the financial condition of said Western Woolen & Knit Goods Company and every statement made by plaintiff as to any contractual relation with him concerning the sale of said, or any, stock. Defendant, over the objection of plaintiff, was permitted to give his version of the transaction in which plaintiff, together with others, became the purchaser of stock which had theretofore belonged to the defendant. The testimony objected to was to the effect that defendant, some time in the fall of 1925, entered into an escrow agreement with one Newell Call, stockholder and manager of the Western Woolen & Knit Goods Company, by which Call agreed to buy, and defendant agreed to sell, all of his stock in said company, amounting to 9,190 shares, for the total sum of $3,500; $500 on said account was paid at the time of entering into the agreement, and the balance was to be paid on or before February 1, 1926. The contract was in writing and that, together with the shares of stock, was delivered to the Bountiful State Bank, of which plaintiff was cashier. The bank was made the depositary of the escrow agreement. Early in January, 1926, defendant stated to Call that he was desirous of taking his wife to California, and that he would like to settle up before January 15; that, if Call would get the money and pay the balance on said contract at or before that date, defendant would "throw off" $100 of the amount still owing on the contract. It appears from the evidence that Call himself was unable to raise the

balance of the money, but that three other parties, including the plaintiff, each took a number of the shares under Call's contract, and, on January 15, 1926, consummated the deal by purchasing the stock and isuing their checks therefor. The checks were converted into a cashier's check on the Bountiful Bank, and the deal closed. This testimony and other evidence bearing upon the same transaction was admitted over plaintiff's objection as being outside the issues of the case as made by the pleadings. It is the contention of plaintiff, appellant here, that such evidence was incompetent irrelevant, immaterial, hearsay, and inadmissible under either a specific or general denial and that, in order to be admissible, should have been specially pleaded, inasmuch as it was a separate and distinct defense. Respondent, on the other hand, contends it was not a distinct and separate defense, but merely another version of the transaction by which plaintiff procured the stock, and was admissible in support of his answer as tending to show that defendant never had any contractual relations with plaintiff respecting the sale of the stock, and never sold him any stock, as alleged in plaintiff's complaint.

Appellant cites the following cases in support of his contention: *Murdock* v. *Farrell*, 49 Utah, 314, 163 P. 1102; *Purdy* v. *Van Keuren*, 60 Or. 263, 119 P. 149; *Laurel Oil Co.* v. *Anthony*, 62 Okl. 94, 162 P. 203; *Cousin* v. *Taylor et al.*, 115 Or. 472, 239 P. 96, 41A L. R. 750.

In each of the cases above cited the matter sought to be proven under a general or specific denial was a separate and distinct defense to the action.

In *Murdock* v. *Farrell*, supra, which is the only Utah case cited, the plaintiffs alleged that they had a lease of certain sheep in Wasatch county in their possession, and were also the owners of a camp outfit and supplies for use in the care and handling of said sheep, and that the defendant then and there promised and agreed with plaintiffs to pay plaintiffs for the release of said sheep and for the outfit and

supplies the sum of $487.11; that, in consideration of the promise and agreement of said defendant, the plaintiffs did release and deliver said sheep and said outfit to said defendant; that defendant had not paid said sum therefor, or any part thereof. The answer of defendant was a general denial. The plaintiffs had judgment. The second paragraph of the syllabus reflects that part of the opinion upon which plaintiff replies:

"Where the complaint states a cause of action on a promise to pay for release of plaintiff's interest in certain sheep and an outfit of supplies, defendant cannot prove under a general denial that plaintiff leased sheep from an incompetent Indian ward of the United States, and that defendant took possession as a sub-agent."

. As to when a party may prove new matter under a general or specific denial, Bliss on Code Pleading (3d Ed.) § 327, states the following rule:

"It has been claimed by some that upon a general denial only—as, of the making of a contract—evidence may be given of any fact, as, coverture, etc., that would go to its original validity. But the true rule is, as will hereafter be more fully shown, that under a denial the defendant should be permitted to show no fact that does not go to disprove the fact denied. Evidence of facts which admit the act charged but which avoid its force or effect, or which discharge the obligation, is inadmissible; but, on the other hand, facts may be proved, although apparently new matter, which, instead of confessing or avoiding, tend to disprove those alleged by the plaintiff. Such facts support the denial. The plaintiff's allegations cannot be true because of certain other facts which are inconsistent with them."

Many apt illustrations are mentioned by the author in subsequent sections.

Appellant's contention that the evidence objected to was new matter in the nature of a separate and distinct defense is untenable. In Pomeroy's Code Remedies (4th Ed.) p. 788, it is said:

"A denial when properly pleaded does not state any facts; it simply denies facts. A defense of new matter, on the other hand, does not deny any facts; it assumes the averments of the complaint or petition to be true; and under the ancient system a plea of confession and avoidance must give color to these averments, or it would be fatally defective."

The same author, at page 773, discussing defenses admitted under a denial, says:

"As the allegations of the complaint or petition controverted by the denials of the answer determine the nature and extent of the evidence admissible under such denials, it follows that this evidence may be sometimes negative and sometimes affirmative. Herein lies the source of much confusion and uncertainty as to the character of the defendant's proofs and defenses, and as to their admissibility under the general denial. Evidence in its nature affirmative is often confounded with defenses which are essentially affirmative and in avoidance of the plaintiff's cause of action, and is therefore mistakenly regarded as new matter requiring to be specially pleaded, although its effect upon the issues is strictly negative, and it is entirely admissible under an answer of denial. In other words, in order that evidence may be proved under a denial, it need not be in its own nature negative; affirmative evidence may often be used to contradict an allegation of the complaint, and may therefore be proved to maintain the negative issue raised by the defendant's denials."

This is followed by pertinent illustrations.

Respondent, in reply to appellant's contention, refers to the following cases: *Anderson Mercantile Co.* v. *Anderson*, 22 N. D. 441, 134 N. W. 36; *Goodwin* v. *Biddy* (Tex. Civ. App.) 149 S. W. 739; *Chealey* v. *Purdy*, 54 Mont. 489, 171 P. 926; *Wolins* v. *Conrad* (N. Y. Sup.) 172 N. Y. S. 216; *Vittucci Co.* v. *Canadian Pac. Ry. Co.*, 102 Wash. 686, 174 P. 981; *Parker Corn Co.* v. *Sexton* (Mo. App.) 217 S. W. 616; *Glencoe Ditching Co.* v. *Martin*, 148 Minn. 176, 181 N. W. 108; *Amarillo Oil Co.* v. *Ranch Creek Oil & Gas Co.* (Tex. Civ. App.) 271 S. W. 145; *Smith* v. *Brougher et al.* (Mo. App.) 274 S. W. 532; *Marsh* v. *Barnard*, 236 Mich. 471, 210 N. W. 478.

In the last case cited, as reported in 236 Mich. 475, 210 N. W. at p. 479, the court said:

"Plaintiff also insists that the testimony of Miss Greeson was not admissible under a plea of the general issue. Her testimony was to the effect that plaintiff, defendant, and herself met at defendant's office to make arrangements about printing the record; that defendant positively refused to become in any way responsible for it; and that the contract was agreed to between herself and plaintiff, and defendant was not a party to it. It should be obvious that it was competent for defendant to show under a plea of the general issue that he had no contract relations with plaintiff for printing the Greeson record, as claimed by her. It was not an affirmative defense."

The authorities cited by respondent generally support the rule announced in Bliss and Pomeroy, above quoted. The sections immediately following give numerous illustrations which are illuminating and instructive upon this question. The illustrations conclusively show that ■ matter affirmatively stated under a denial which merely has the effect of disproving the issue presented by the complaint is not such new matter as constitutes a separate and distinct defense. It is not necessary that such matter should be specially pleaded.

Appellant assigns error as to other evidence admitted over his objection, but the most casual examination of the questions presented demonstrates that they come within the rule of the authorities last referred to. Objections are made to many of the findings because the court specifically found the facts relating to the Call contract and its final consumation. We doubt if such findings were necessary because the court, in addition thereto, found that the defendant did not at any time enter into any agreement with defendant for the purchase of any shares of the Western Woolen & Knit Goods Company; that defendant did not at any time represent to plaintiff that the Western Woolen & Knit Goods Company was in a solvent or sound financial condition, or that the business of said company was flourishing and grow-

ing; that defendant did not at any time, or at all, agree that, if plaintiff would purchase defendant's shares of stock, defendant would continue as district sales manager or supervisor of sales agents for said company, or would continue to maintain or improve said sales organization, or would give his time and energy to the promotion of said company's business.

Other findings were made by the court as to issues of a collateral nature, but there is nothing in them inconsistent · with the findings to which we have referred.

The findings we have enumerated cover the material issues presented by the complaint, and, in our opinion, are clearly warranted by the evidence. Even if some of the findings were wholly unnecessary, we do not find that any of them were prejudicial to the substantial rights of the plaintiff.

Other assignments of error not specifically referred to are without merit.

JUDGMENT AFFIRMED, at appellant's cost.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.